# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA APODACA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION and DOE 1 through and including DOE 100,<br><br>Defendants. | Case No. CV12-5664 DSF (Ex)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

On October 10, 2013, a jury entered a verdict in favor of Defendant Costco Wholesale Corporation with respect to Plaintiff Loretta Apodaca's claims for unpaid overtime in violation of the California Labor Code and the Fair Labor Standards Act (FLSA), and her claims for failure to provide adequate meal periods and rest breaks in violation of the California Labor Code. The remaining claims – for failure to provide accurate itemized wage statements in violation of the California Labor Code, for waiting time penalties under the California Labor Code, for unfair competition under the California Business & Professions Code, and for civil penalties under the Private

Attorneys General Act (PAGA) – remain for resolution by the Court. The Court held a hearing on these claims on March 10, 2014. The Court, having heard live testimony and having duly considered the evidence, the credibility of the witnesses, the entire file of the Court, and the contentions and arguments of counsel, makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

## I. FINDINGS OF FACT[1]

1. Apodaca was employed by Costco from 2004 until May 24, 2012. (Reporter's Transcript, Oct. 8, 2013 (RT1) 119:7-13; Trial Ex. 153.)

2. Prior to November 2006, Apodaca worked as an Assistant Front End Manager, receiving an annual salary of $52,500. (See Trial Ex. 145.) Costco promoted Apodaca to Bakery Manager in November 2006. (RT1 119:14-120:4.) After her promotion, her annual salary increased to $62,000. (See Trial Ex. 145.)

3. As a Bakery Manager, Apodaca was generally scheduled to work eight regular hours and one overtime hour per work day. (RT1 185:8-14.)

4. Apodaca began receiving electronic wage statements as early as May 2011. (See Trial Ex. 7.) These electronic wage statements could be accessed through the internet. (See Trial Ex. 1006.) Apodaca was able to easily access and print her wage statements. (See March 19, 2013 Dep. of Loretta Apodaca (3/19/13 Apodaca Dep.) 172:16-24, 178:18-179:6.)

---

[1] The Court has adopted certain findings of fact and conclusions of law from the proposed findings and conclusions of both parties. Any different or additional proposed findings or conclusions were either unsupported or unnecessary to the Court's determination.

-2-

5. Apodaca's wage statements list the total regular, overtime, and doubletime hours Apodaca worked. (See Trial Ex. 7.) The statements also list Apodaca's "total earnings" and "total net pay." (See id.)

6. The statements include a line item for "vacation pay/non-exempt salaried vacation or float overtime." (Trial Ex. 7.) The hours listed in this line item do not represent hours actually worked. Rather, they represent the eight hours of "vacation pay" and the one hour of "float overtime" Costco provided for each vacation day taken. (See Dep. of Katherine Kearney (Kearney Dep.) 65:14-23, 210:7-14; see also April 12, 2013 Dep. of Loretta Apodaca (4/12/13 Apodaca Dep.) 378:12-23.) Even assuming Apodaca was confused by the meaning of the phrase "float overtime," Costco's failure to clarify this was neither a knowing nor intentional violation of California Labor Code Section 226. Apodaca never asked Costco to clarify the meaning of the term, (4/12/13 Apodaca Dep. 378:8-11), and there is no evidence that Costco was otherwise made aware of any confusion surrounding the term.

7. Because "vacation pay" and "float overtime" hours are not differentiated on the wage statement, it is impossible to determine which of those hours were compensated at the regular rate of pay, and which were compensated at the overtime rate. (See Kearney Dep. 210:15-211:3.) Costco's failure to separately identify the rates of pay for "vacation pay" and "float overtime" was neither a knowing nor intentional violation of California Labor Code Section 226. There is no evidence showing that Costco was made aware of this issue prior to the initiation of this lawsuit.

8. Costco demoted Apodaca from her Bakery Manager position to a non-managerial position in April 2012. (Reporter's Transcript, Oct. 9, 2013 (RT2) 125:18-20.) After her demotion, Apodaca's compensation decreased to a rate of $19.72 per hour. (See Trial Ex. 153.)

9. Costco suspended Apodaca on May 10, 2012, her last day worked. (Trial Ex. 152.) Apodaca was officially terminated on May 24, 2012, and she received her final

3

paycheck at that time. (Trial Ex. 153.) The final paycheck, which compensated Apodaca for her accrued vacation, reflected Apodaca's new $19.72 hourly rate of pay. (See id.)

## II. CONCLUSIONS OF LAW

### A. Cal. Lab. Code § 226

10. California Labor Code Section 226(a) states that "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing . . . (1) gross wages earned, (2) total hours worked by the employee, . . . (5) net wages earned, . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

11. Under California Labor Code section 226(e), "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover" actual damages or a penalty.

#### 1. Electronic Wage Statements

12. The Court has already ruled, in its summary judgment Order, that the provision of an electronic wage statement in lieu of a paper statement violates Section 226(a) only if Apodaca could not "easily access the wage statements and easily convert the statements into hard copies." (Docket No. 30, 10/29/12 Order, at 4.)

13. The only argument Apodaca advances with respect to this issue is that she could not print her wage statement from the employee break room computer, as that room lacked a printer. (See Pl.'s Proposed Findings of Fact and Conclusions of Law (Pl.'s Proposed FFCL) ¶ 18.) But the evidence cited in support of this proposition directly contradicts it. (See Harris Decl. in Support of Pl.'s FFCL, Ex. 2, Dep. of Elayne Elizabeth Bastian 40:3-4 (stating that there is a printer in the break room that can be used for Costco business).) Moreover, Apodaca herself testified that she was able to view her

4

wage statements online, that she printed them from her home computer, and that she was able to print them from the computer in the break room. (3/19/13 Apodaca Dep. 172:16-24, 178:18-179:6.)

14. Because Apodaca could easily access her wage statements, the provision of electronic wage statements did not violate Section 226(a).

### 2. Failure to List Total Hours Worked

15. Apodaca contends that the line item for "vacation pay/non-exempt salaried vacation or float overtime" contained in her wage statements violates the requirement that wage statements list the employee's "total hours worked." Cal. Lab. Code § 226(a)(2).

16. In denying Costco's motion for summary judgment as to this claim, the Court stated that Costco violated Section 226(a)(2) by failing to differentiate between "hours of float overtime worked with hours of vacation taken by the employee." (10/29/12 Order, at 5.) The Court reasoned that, although the wage statements accurately listed the total regular, overtime, and double-time hours worked, the statements' failure to list the float overtime hours worked in its own category made it impossible for Apodaca to calculate the total number of hours worked. (See id.)

17. The Court's conclusion, however, was premised on the assumption that the phrase "float overtime" referred to overtime hours actually worked. Costco has submitted evidence – obtained after the Court's summary judgment Order – making clear that "float overtime" does not refer to hours worked, but to overtime compensation for vacation days taken. (See Kearney Dep. 65:14-23, 210:7-14; see also 4/12/13 Apodaca Dep. 378:12-23.) Apodaca has offered no evidence to the contrary.

18. Apodaca contends, however, that she was confused about the meaning of "float overtime" and therefore could not determine from her wage statements her total hours worked. (4/12/13 Apodaca Dep. 378:1-7.) But even assuming this is true, and assuming that the ambiguity of this term could constitute a violation of Section

5

226(a)(2),[2] Apodaca nonetheless cannot establish that the violation was a "knowing and intentional failure . . . to comply with [Section 226(a)]." Cal. Lab. Code § 226(e)(1). Where an employer has a good faith belief that it is not in violation of Section 226, any violation is not knowing and intentional. See Wright v. Adventures Rolling Cross Country, Inc., No. C-12-0982 EMC, 2013 WL 1758815, at *9 (N.D. Cal. Apr. 24, 2013); Ricaldai v. U.S. Investigations Servs., LLC, 878 F. Supp. 2d 1038, 1047 (C.D. Cal. 2012). Here, there is no evidence that Costco was made aware of any confusion surrounding the term "float overtime." Indeed, Apodaca testified that she never even asked her employer what the term meant. (4/12/13 Apodaca Dep. 378:8-11.) Apodaca points to testimony by Katherine Kearney, Costco's Assistant Vice President for payroll and benefit accounting, regarding the lack of a written explanation as to what "float overtime" referred to. (See Kearney Dep. 56:6-57:7.)[3] But absent evidence of confusion over the term, there would be no reason for Costco to define it. Apodaca also points to documents from previous wage and hour lawsuits against Costco that purportedly put them on notice of their violations. (See Docket No. 18, Exs. 3, 5; Trial Ex. 82.) But even if these documents are admissible – which Costco disputes – none of them refers to "float overtime." Because this issue was not even raised in these prior lawsuits, Costco could not have been put on notice of it. Finally, Apodaca cites testimony from Kearney that Costco changed its wage statements as a result of this lawsuit.[4] (See Pl.'s Proposed FFCL 5-7.) But Costco's willingness to correct a potential error does not suggest that the error was made knowingly and intentionally. Rather, it suggests just the opposite – that the violation (if it was a violation) was unintentional and that Costco rectified it once Costco became aware of it.

---

[2] Whether an employee can "promptly and easily determine from the wage statement" the total number of hours worked appears only relevant to whether the employee suffered an injury under this Section, not whether a violation occurred. See Cal. Lab. Code § 226(e)(2)(B).

[3] In fact, whether such a definition was available to employees is unclear from the cited testimony. (See id.)

[4] Costco also disputes the admissibility of this testimony.

6

19. Therefore, because Apodaca has provided the Court with no basis to conclude that any violation of Sections 226(a)(2) was "knowing and intentional," this claim must also fail.

### 3. Failure to List Gross and Net Wages

20. In her Proposed Findings of Fact and Conclusions of law, Apodaca contends that, due to the nature of the "vacation pay/non-exempt salaried vacation or float overtime" line item, the wage statement did not list the "gross wages earned" and "net wages earned" as required by Section 226(a)(1) and (a)(5). But the wage statements clearly list "total earnings" and "total net pay," thus complying with Section 226(a). (See Ex. 7.) The failure to differentiate vacation pay from "float overtime" has no bearing on this issue.

### 4. Failure to Specify Rates of Pay

21. Apodaca also argues that the "vacation pay/non-exempt salaried vacation or float overtime" line item violates Section 226(a)(9), which requires that each wage statement list all applicable hourly rates and the corresponding hours worked at each rate. This claim has merit. As discussed above, this line item represents the eight hours of regular pay and one hour of overtime pay compensated for each vacation day taken. Because these hours are aggregated, it is impossible to tell which hours were compensated at the overtime rate, and which were compensated at the regular rate. Kearney conceded as much, testifying that "by this pay stub you wouldn't be able to determine the hourly rate because it has a blend right in that line of vacation hours that are paid in straight pay and then the additional hour that's paid for vacation or float at overtime rate." (Kearney Dep. 210:18-23.)

22. However, Apodaca has not established that this violation was "knowing and intentional" violation of Section 226. Cal. Lab. Code § 226(e)(1). Again, Apodaca cites only to prior cases in which this error does not appear to have been raised, (see Trial Ex. 82, Docket No. 18, Exs.3, 5), and to testimony about subsequent remedial measures that have no bearing on Costco's prior intent, (see Pl.'s Proposed FFCL 5-7).

7

### B. Cal. Lab. Code § 203

23. Apodaca seeks continuing wages under California Labor Code Section 203. That provision allows an employee to recover such wages "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with [certain procedures], any wages of an employee who is discharged or who quits." Among those procedures are Section 201(a), which requires that, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." To the extent Apodaca's Section 203 claim is premised on Costco's failure to adequately compensate Apodaca for overtime pay and meal and rest breaks, it is precluded by the jury's verdict. See Miller v. Fairchild Indus., Inc., 885 F.2d 498, 507 (9th Cir. 1989) ("[T]he Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations . . . ."). Indeed, in support of her arguments with respect to these issues, Apodaca cites only to evidence that was already presented to the jury at trial.

24. Apodaca further argues that Costco violated Section 203 by providing her with her final paycheck two weeks late. This claim lacks merit. The parties do not dispute that Apodaca's last day worked was May 10, 2012, when she was suspended from work, (see Trial Ex. 152), and that Apodaca received her final paycheck when she was officially terminated on May 24, 2012, (see id., Trial Ex. 153). According to Apodaca, her May 10 suspension date constituted her "discharge," and therefore she was owed her final paycheck at that time. Apodaca cites to the Division of Labor Standards Enforcement Policies and Interpretations Manual (DSLE Manual), which states that "[i]f an employee is laid off without a specific return date within the normal pay period, the wages earned up to and including the lay off date are due and payable in accordance with Section 201." DSLE Manual § 3.2.2. Apodaca argues that she had been discharged on her May 10 suspension date because she was not given a return date at that time. In support of this argument, she cites to an older case in the unemployment context stating

8

that "appellants had been indefinitely laid off [because] there was no definite date of recall." Campos v. Emp't Dev. Dep't, 132 Cal. App. 3d 961, 968 (1982). But that case concerned seasonal workers who "had been indefinitely laid off for varying periods of time." Id. at 965. Apodaca was suspended. A layoff is a completely different employment action. It cannot be the case that every time an employee is suspended without being provided a concrete date for the end of the suspension, she is immediately due a final paycheck even before a final termination decision. Construing the term "discharge" to be equivalent to a suspension is contrary to the term's plain meaning. It would also produce the absurd result of precluding employers from investigating and carefully considering a potential termination without either (1) immediately paying the employee a final paycheck – even if the employer ultimately decides against termination, or (2) allowing the (potentially troublesome) employee to continue to work during the investigation. Here, Apodaca has provided the Court with no evidence showing that Costco made a decision to discharge her before March 24, 2012, when she received her final paycheck. Therefore, her Section 203 cannot rest on the timing of her final paycheck.

25. Apodaca also bases her Section 203 claim on allegations that she was never paid for work she completed on May 8 and May 10, 2012, and that she was not paid her vested vacation pay at the proper rate.

26. With respect to the alleged unpaid work for May 8 and 10, Apodaca has failed to meet her burden. The only evidence she offers in support of this are documents showing her hours worked and her final paycheck and wage statement. (See Trial Exs. 7, 19, 153.) But because the paycheck and wage statement do not break down the hours worked by day, it is impossible for the Court to determine whether Apodaca was compensated for these hours worked.

27. With respect to the vacation pay, Apodaca contends that she should have been paid at a rate of $25.24 per hour, rather than $19.72 per hour. The $19.72 rate was a result of Apodaca's demotion from her Bakery Manager position to a non-managerial

9

position several weeks before she was terminated.  (See RT2 125:18-20; Trial Ex. 153.) Apodaca argues that her rate of pay should have been $25.23, which was her rate of pay before she was promoted to Bakery Manager.  (See Trial Ex. 145.)  In support of her argument, she cites to a provision of the Costco Employee Agreement regarding "Pay and Classification Following a Demotion." (Trial Ex. 8, at 23.)  It states that "Supervisors/Salaried Employees" who are demoted "return to the pay scale [they] were on before [their] promotion." (Id.)  Apodaca's assertion, therefore, may have some merit. But Apodaca has not established her entitlement to this higher rate of vacation pay by a preponderance of the evidence.  Although the provision states that the demoted employee returns to the "pay scale" preceding the promotion, the actual "pay rate" is determined based on an hours formula that is less than clear.  (See id.)  It is also unclear whether this provision applies to the rate of vacation pay.  Because Apodaca has not provided the Court with any other evidence or testimony on this issue aside from the ambiguous provision itself,[5] she has failed to meet her burden of proof.

### C. § 17200 Unfair Competition

28. In her Section 17200 claim, Apodaca seeks to relitigate issues already decided by the jury.  Indeed, the vast majority of the evidence Apodaca cites in support of this claim was presented to the jury.[6]  (See Pl.'s Proposed FFCL ¶¶ 36-105.)

29. Apodaca premises her claim on Costco's alleged failure to provide her adequate meal breaks and rest periods, as well as its alleged failure to pay her earned overtime.  By its verdict, the jury found in Costco's favor with respect to each of these three claims.  And although the statute of limitations for a Labor Code or FLSA claim

---

[5] Costco cites to deposition testimony on the interpretation of this provision, but that testimony is unclear as well. (See Dep. of Joni Hammer 250:25-253:22; Dep. of Elayne Bastian 134:16-135:21.)

[6] Apodaca puts forward a new argument that Costco's rest periods were "facially illegal," (Pl.'s Proposed FFCL ¶ 56), but those policies were admitted at trial and the jury nonetheless found in Costco's favor with respect to the alleged "failure to provide rest breaks," (Docket No. 244, Jury Verdict).

action is one year shorter than that for a Section 17200 claim,[7] the jury's determination was not temporally limited.  In contrast to the damages questions – which asked the jury to determine damages "after October 28, 2009," the liability questions merely asked, for example, "On the claim for unpaid overtime, do you find in favor of Ms. Apodaca or Costco?"  (Docket No. 244, Jury Verdict.)  Nor was the evidence at trial limited to conduct after October 28, 2009; this is made clear by Apodaca's failure to cite evidence in support of her Section 17200 claim other than that which was submitted at trial.

30.   "[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, in deciding the equitable claims the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations."  Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (citation and quotation marks omitted).  Apodaca contends that "a judge can always set aside a jury verdict . . . if it is irrational."  (Pl.'s Proposed FFCL , at 45.)  But Apodaca did not move to set aside the jury verdict, nor would such a motion have been meritorious.

31.   Because the Court is bound by the jury's verdict, Apodaca's Section 17200 claim cannot succeed.  The result would be the same even if the Court were not so bound.

**D.   PAGA**

32.   Apodaca's request for PAGA penalties is premised exclusively on the above unsuccessful claims.  Therefore, Apodaca's request for PAGA penalties is denied.

---

[7] The limitations period for a Labor Code or FLSA claim is, at most, three years.  Cal. Code Civ. Proc. § 338; 29 U.S.C. § 255(a).  The limitations period for a UCL claim is four years.  Cal. Bus. & Prof. Code § 17208.

11

## III. CONCLUSION

33. Costco is entitled to judgment in its favor with respect to all claims. Costco is to submit a proposed judgment.

DATED: 6/5/14

_____
Dale S. Fischer
United States District Judge